# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.S.**

**No. 17-0811** (Kanawha County 17-JA-99)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.S., by counsel Herbert L. Hively, II, appeals the Circuit Court of Kanawha County's August 2, 2017, order terminating her parental rights to A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and denying her a post-adjudicatory improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, the DHHR filed an abuse and neglect petition that alleged the parents neglected the child. According to the petition, the parents were arrested earlier that month and charged criminally with child neglect creating risk of injury when law enforcement found the parents and the child in a residence described as "dangerous and unfit for human habitation." The petition alleged that the home was filled with mold, mildew, unprotected electrical connections and an exposed oven face. Additionally, there were roaches and roach droppings on every surface in the kitchen, and the dishwasher was filled with mold, mildew, insects, and insect droppings. Officers also discovered drug paraphernalia, including used needles, within the child's reach. Additionally, the petition alleged a history of domestic violence between the parents and drug use. Specifically, the DHHR indicated that the prior month, the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, petitioner does not raise a specific assignment of error regarding the termination of her parental rights.

father tested positive for benzodiazepines and opiates, which required the administration of Narcan. Further, petitioner tested positive for a number of drugs during her pregnancy with the child, who also tested positive for drugs at birth. Finally, the petition alleged that petitioner's rights to an older child were previously involuntarily terminated, which petitioner later confirmed. During a later preliminary hearing, the circuit court heard testimony from a law enforcement officer concerning the conditions in the home and also admitted into evidence the criminal complaints filed against the parents.

In March of 2017, the circuit court held an adjudicatory hearing, during which it heard testimony from the father and the child's paternal grandmother. The circuit court admitted a DHHR court summary into evidence and also considered all previously-introduced evidence. Based upon the evidence, the circuit court found that the home from which the child was removed "was unsafe and not suitable for human habitation." According to the evidence, the home "was contaminated with rodent and insect feces and mold[,]" in addition to being "structurally dangerous, with missing flooring, nonfunctioning plumbing, and rotting cabinetry." Moreover, the circuit court found that the home "was covered with spoiled food and open garbage" and also "contained drug paraphernalia such as straws, razor blades and matches." Based upon this evidence, the circuit court found that the parents "knowingly exposed the child to a filthy, dangerous environment." As such, the circuit court adjudicated petitioner as an abusing parent.

In May of 2017, the circuit court held a dispositional hearing. Petitioner moved for a post-adjudicatory improvement period, but the circuit court ultimately denied that motion. The circuit court based this ruling, in part, upon evidence that petitioner was not "willing to acknowledge any parenting deficiencies amenable to correction." Based upon this evidence, the circuit court found that petitioner "failed to demonstrate that [she was] likely to comply with the terms and conditions of a post-adjudicatory improvement period." Thereafter, the circuit court terminated petitioner's parental rights to the child.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[3]In addition to the termination of petitioner's parental rights, the parental rights of the father to the child were terminated below. According to respondents, the permanency plan for the child is adoption in the current relative placement.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. In support of this assignment of error, petitioner argues that the DHHR failed to present any evidence of drug use or domestic violence. She further argues that the home in question belonged to the paternal grandmother and, accordingly, "the . . . DHHR did [not] show that [she] lived in that home with the child and exposed her to those conditions . . . ." Moreover, petitioner argues that law enforcement responded to the home several days prior to removal, but permitted the child to remain in the home, thus establishing that it was appropriate for the child. We do not find these arguments compelling.

In regard to the burden of proof at adjudication, we have held as follows:

"W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Based upon this holding, it is clear that petitioner's arguments are without merit. First, the fact that the DHHR did not establish petitioner's drug abuse or the presence of domestic violence in the home is immaterial, given that the circuit court ultimately adjudicated petitioner of exposing the child to the uninhabitable environment. Similarly, the issue of whether or not the home in question was petitioner's primary residence is also immaterial, given that the evidence established that petitioner often spent the night in the home with the child and that the child was found in the home. In fact, testimony at the preliminary hearing established that petitioner "had been residing there for some time" after having been removed from a different residence.

Finally, the fact that law enforcement permitted the child to remain in the home prior to the ultimate removal has no bearing on whether or not the DHHR satisfied its legal burden of establishing that petitioner was an abusing parent. Importantly, testimony at the preliminary hearing indicated that the home's condition deteriorated between the initial contact with law enforcement and the child's removal. Further, testimony established that the child was permitted to remain in the home upon the grandmother's assurance that she could keep the child away from the dangerous conditions in the part of the home in which the parents were staying, while the parents were removed. Ultimately, because petitioner continued to expose the child to the specific conditions that law enforcement identified as inappropriate, the child was removed from the home.

Contrary to petitioner's arguments, the DHHR clearly satisfied its burden of proof regarding adjudication. While petitioner argues that the DHHR presented only one witness in support of its burden, she fails to acknowledge that testimony from the father and the paternal grandmother, the only witnesses presented to rebut the DHHR's allegations, was found entirely incredible. Specifically, the circuit court found that the grandmother's "testimony was not credible" because she was not candid. As a result, the circuit court held that it would "disregard her testimony entirely." Moreover, the circuit court found the father's testimony during the entire proceedings lacked credibility because of his "mental and emotional instability and bizarre behavior." The DHHR, however, presented extensive testimony concerning the deplorable condition of the home, which lead the circuit court to find that petitioner "knowingly exposed the child to a filthy, dangerous environment" because the home from which the child was removed "was unsafe and not suitable for human habitation."

West Virginia Code § 49-1-201 defines "neglected child" as, in part, one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary shelter [or] supervision[.]" The evidence below clearly established that petitioner failed to provide the child with necessary shelter or supervision, as the home in question was not only uninhabitable, but also contained many dangerous conditions and items that were within the child's reach. Accordingly, we find no error in the circuit court's adjudication.

Finally, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. We do not agree. While petitioner argues that the evidence at disposition established that she would be willing to fully comply with the terms of an improvement period, the record is clear that petitioner simply failed to acknowledge her parenting deficiencies such that an improvement period would have been inappropriate. On appeal, petitioner alleges that a DHHR employee testified that she would be a good candidate for an improvement period. She further argues that she testified to her willingness to comply with the terms of an improvement period. However, petitioner ignores the fact that she failed to accept responsibility for her abuse and neglect of not only this child, but the older child to which her parental rights were previously involuntarily terminated.

Specifically, at disposition, petitioner testified that her parental rights to the older child were involuntarily terminated because of the child's father's conduct, not her own. Her testimony caused the circuit court to conclude that "she accepted no responsibility for the child abuse and neglect that resulted in the prior termination, and blamed everything on the father's substance abuse." Although petitioner testified that she recognized issues with the home from which the child was removed, the circuit court ultimately found that petitioner was not "willing to acknowledge any parenting deficiencies amenable to correction." This evidences petitioner's failure to acknowledge the conditions of abuse and neglect that necessitated the child's removal. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the

4

perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

We have also noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). Because petitioner failed to acknowledge the conditions of abuse and neglect that necessitated the petition's filing, we find no abuse of discretion in the circuit court's denial of her motion for a post-adjudicatory improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 2, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker